USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/12/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ICICI BANK LIMITED, *acting through its Singapore*      :
*branch*,      :
     :
                 Plaintiff,      :         1:16-cv-7836-GHW
     :
         -against-      :      <u>MEMORANDUM OPINION</u>
     :           <u>AND ORDER</u>
ESSAR GLOBAL FUND LIMITED, *f/k/a ESSAR* :
*Global Limited*, ESSAR STEEL LIMITED      :
MAURITIUS, *f/k/a ESSAR Steel Holdings limited*,   :
ESSAR STEEL ASIA HOLDINGS LIMITED, and :
ESSAR STEEL MAURITIUS LIMITED,      :
     :
               Defendants. :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Defendants removed this breach of contract action from state court pursuant to the federal bankruptcy removal statute. They now seek an order transferring the action to the District of Delaware pursuant to either the general change of venue statute, 28 U.S.C. § 1404(a), or the bankruptcy change of venue statute, 28 U.S.C. § 1412. For the reasons that follow, Defendants' motion to transfer this action is DENIED.

## I.  BACKGROUND

### A.  The Guarantee Agreements, the Underlying Lawsuit, and ESML's Bankruptcy Petition

This suit arises from an iron ore project for which Essar Steel Minnesota LLC ("ESML") sought funding in 2010. As alleged in the complaint, Plaintiff ICICI Bank Limited, Singapore Branch, as facility agent ("ICICI-Singapore" or "Plaintiff"), ICICI Bank Limited, New York Branch, as Lender ("ICICI-New York"), and Essar Steel Minnesota ("ESML"), as Borrower executed a Senior Secured Credit Agreement dated December 29, 2010 (the "Credit Agreement"). ECF No. 1, Notice of Removal, Ex. 1 ("Compl."), ¶¶ 1, 8. As subsequently amended, the Credit Agreement

extended to ESML a term loan facility totaling approximately $530 million, which was syndicated among ICICI-New York; the State Bank of India, New York Branch; Canara Bank, London Branch; Union Bank of India, Hong Kong Branch; and Syndicate Bank, London Branch (collectively, the "Lenders").  Compl. ¶ 8.  Each of the Defendant entities, who are affiliates of ESML, executed guarantee agreements under which they "agreed to unconditionally and irrevocably guarantee the prompt and complete payment of [ESML's] obligations under the Credit Agreement."  Compl. ¶¶ 9-14.  The guarantee agreements executed by Defendants Essar Global Fund Limited and Essar Steel Limited Mauritius are dated as of December 29, 2010.  Compl. ¶¶ 9-10.  The guarantee agreements executed by Defendants Essar Steel Asia Holdings Limited and Essar Steel Mauritius Limited are dated as of March 28, 2014.  Compl.  ¶¶ 11-12.

On January 5, 2016, ESML issued to ICICI-Singapore a "material event notice" stating that ESML was in default under the Credit Agreement because it had failed to make an interest payment of $8,796,721.79 and to pay an agency fee of $25,000.  Compl. ¶ 15.  On April 25, 2016, ICICI-Singapore informed ESML that, in light of this and other defaults, it was accelerating the loan in accordance with the Credit Agreement.  Compl. ¶ 16.  ICICI-Singapore demanded immediate payment of principal, accrued interest, and fees.  *Id.*  Two days later, ICICI-Singapore notified Defendants of the acceleration and demanded that they pay the amounts due by ESML pursuant to their respective guarantee agreements.  Compl. ¶ 17.  In May 2016, ICICI-Singapore made two additional demands for payment.  Compl. ¶¶ 18-19.

On July 8, 2016, ESML filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Delaware.  ECF No. 1, Notice of Removal, Ex. 3.  ESML's bankruptcy petition lists Plaintiff as a creditor with an unliquidated claim of $529,957,247—the same principal amount that Plaintiff seeks to recover from Defendants under the guarantee agreements in this action.  *Id.* at 10.

On September 2, 2016, Plaintiff initiated this lawsuit against Defendants in the Supreme

Court of the State of New York, New York County.  As of that date, the only payment made by any

of the Defendants was $4 million paid by Essar Steel Mauritius.  Compl. ¶ 20.  Accordingly, Plaintiff

asserts claims against each Defendant for breach of their respective guarantee agreements.  Plaintiff

seeks $529,957,247.70 in principal, $28,885,256.18 in interest through August 2016, $481,948.98 in

attorneys' fees pursuant to the Credit Agreement, interest for the period from September 1, 2016

through the date of judgment, and additional attorneys' fees as permitted by the guarantee

agreements and applicable law, in an amount to be quantified.  Compl. at 7-8.

### B.  Removal to This Court Pursuant to 28 U.S.C. § 1452(a)

On October 6, 2016, Defendants removed this case to the United States District Court for

the Southern District of New York pursuant to the federal bankruptcy removal statute, 28 U.S.C.

§ 1452(a), which provides:

> A party may remove any claim or cause of action in a civil action other than a
> proceeding before the United States Tax Court or a civil action by a governmental
> unit to enforce such governmental unit's police or regulatory power, to the
> district court for the district where such civil action is pending, if such district
> court has jurisdiction of such claim or cause of action under section 1334 of this
> title.

28 U.S.C. § 1334(b) provides that federal courts "shall have original but not exclusive jurisdiction of

all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Defendants assert that removal is proper here because this case is "related to" the ESML bankruptcy

proceeding.  ECF No. 1, Notice of Removal, ¶ 11.  Plaintiff has not challenged the propriety of

Defendants' removal of this action, nor have they sought to remand the action to state court on any

other grounds.

A case is within the court's "related-to" jurisdiction if its outcome "might have any

'conceivable effect' on the bankrupt estate."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.

1992); *see also In re Cavalry Constr., Inc.*, 496 B.R. 106, 111 (S.D.N.Y. 2013) ("[C]ivil proceedings are

'related to cases under title 11' if the outcome of those proceedings in any way impacts upon the

handling and administration of the bankrupt estate." (internal quotation marks and citation omitted)).  Because any recovery against Defendants in this action would offset the Lenders' claim against ESML's estate in bankruptcy, and because Defendants may assert rights of subrogation, indemnification, or contribution against ESML, the Court is satisfied that this case is "related to" the ESML bankruptcy proceeding.  *See, e.g., Merrill Lynch Mortg. Capital Inc. v. Esmerian*, No. 08-cv-5058 (NRB), 2008 WL 2596369, at *1 (S.D.N.Y. June 30, 2008) ("A creditor's claim against the guarantor of a bankrupt debtor's obligations is a textbook example of a 'related' proceeding . . . .").  Accordingly, removal of this case pursuant to 28 U.S.C. § 1452(a) was proper, and the Court has jurisdiction over the case.

### C.  Defendants' Counterclaims

On November 3, 2016, Defendants filed their answer to the complaint, interposing numerous defenses and asserting counterclaims for equitable estoppel and fraudulent inducement. ECF No. 12.  Defendants seek dismissal of the complaint in its entirety, a judgment declaring that the Lenders are estopped from seeking to enforce the guarantees against Defendants and that the guarantees are deemed satisfied, and damages in an amount to be determined at trial.  *Id.* at 15.

### D.  The Forum Selection and Choice of Law Clauses

The guarantee agreements executed by each of the Defendants contain identical venue provisions, which read in relevant part:

> The Guarantor . . . hereby irrevocably consents that any legal action, suit or proceeding arising out of or relating to this Agreement or any of the Loan Documents and any other document or instrument required to be executed in relation thereto may be instituted in or (other than by the Guarantor) removed to the U.S. federal and New York state courts located in the Borough of Manhattan, City and State of New York . . . .  The Guarantor hereby waives any objection it may now or hereafter have to the laying of the venue of any such action, suit or proceeding, and further waives any claim that any such action, suit or proceeding brought in any of the aforesaid courts has been brought in any inconvenient forum.

ECF No. 28, Decl. of Linda Phua in Supp. of Pl.'s Mot. for Summ. J. ("Phua Decl."), Exs. 7, 10, 13,

14.[1]  The guarantee agreements also provide that they "SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK." *Id.*

### E.  Defendants' Motion to Transfer

On November 17, 2016, Defendants filed a motion pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1412 to transfer this case to the United States District Court for the District of Delaware, whereupon, Defendants assert, the case would automatically be referred to the United States Bankruptcy Court for the District of Delaware pursuant to that district's standing order of reference under 28 U.S.C. § 157(a).  ECF No. 19; *see also* ECF No. 20, Defs.' Mem. of Law in Supp. of Mot. to Transfer ("Defs.' Mem.").  Plaintiff opposes the motion, contending that it must be denied in light of the Supreme Court's holding in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568 (2013).  ECF No. 27, Pl.'s Mem. of Law in Opp'n to Mot. to Transfer ("Pl.'s Mem."), at 3-10.  In the alternative, Plaintiff argues that the Court should exercise its discretion in favor of keeping the case in New York.  *Id.* at 10-15.

## II.  DISCUSSION

As already noted, Congress has provided for the removal of bankruptcy-related claims or actions to the federal district court for the district in which the state action is pending.  28 U.S.C. § 1452(a).  Congress has also created a statutory scheme under which such claims or actions, once removed, can be transferred from one federal district court to another under appropriate circumstances.  As the Court will discuss in further detail below, some motions to transfer are governed by 28 U.S.C. § 1404(a), which provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[1] On November 21, 2016, the Court granted Plaintiff leave to move for summary judgment on its claims for breach of the guarantee agreements.  ECF No. 23.  The Court set the deadline for Plaintiff's motion to December 5, 2016.  The Court set the deadline for Plaintiff's opposition to Defendants' motion to transfer for the same date.  Accordingly, Plaintiff filed both sets of papers on December 5, 2016, and cites some of its summary judgment exhibits to support its opposition to the transfer motion.

where it might have been brought or to any district or division to which all parties have consented." Other motions to transfer are governed by 28 U.S.C. § 1412, which provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

Based upon that statutory scheme, Defendants argue without supporting authority that "[t]he whole purpose of bankruptcy removal—and the legislative rationale for conferring federal jurisdiction where it otherwise would not exist—is to bring the action within the jurisdiction of the bankruptcy court presiding over the related bankruptcy case." ECF No. 34, Defs.' Reply Mem. of Law in Supp. of Mot. to Transfer ("Defs.' Reply Mem."), at 1. Similarly, Defendants reference "Congressional intent to allow bankruptcy related actions to be litigated in the district presiding over the bankruptcy case"—again without citation. *Id.* at 2. The Court does not agree that Congress has expressed such an intent, except to the extent that analysis under § 1404(a) or § 1412 would counsel in favor of discretionary transfer.

"[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *see also Nixon v. United States*, 506 U.S. 224, 232 (1993) (citing the "well-established rule that the plain language of the enacted text is the best indicator of intent"). Congress could have enacted a statute providing for the removal of cases to the district in which the related bankruptcy case is pending, but it did not. Instead, Congress provided for removal to the district court for the district where the related state court claim or cause of action is pending. 28 U.S.C. § 1452(a). The language of § 1452(a) is perfectly clear.

Similarly, Congress could have enacted a statute compelling the transfer of cases removed pursuant to § 1452(a) to the district in which the related bankruptcy is pending, but it did not do that, either. Instead, transfers are governed by §§ 1404 and 1412. Indeed, even § 1412, which

contains bankruptcy-specific language, is discretionary and makes no specific reference to transfer to the district in which the related bankruptcy case is pending; rather, it provides more generically that a "district court *may* transfer a case or proceeding under title 11 to *a district court for another district.*"  28 U.S.C. § 1412 (emphasis added).  Moreover, Congress has limited that discretion to instances in which transfer would serve the "interest of justice" or the "convenience of the parties."  *Id.*

  In one sense, Defendants are correct.  The statutory scheme of §§ 1452(a), 1404(a), and 1412 do *allow* bankruptcy-related actions to be litigated in the district presiding over the bankruptcy case, but only if the analysis under the applicable change of venue statute yields that result.

## A.  The Applicable Change of Venue Statute

  Transfer of venue for non-core proceedings is governed by 28 U.S.C. § 1404(a).  *See, e.g.*, *Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, No. 15-cv-3474 (SAS), 2015 WL 5257003, at *7 (S.D.N.Y. Sept. 9, 2015); *Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 426 n.5 (S.D.N.Y. 2013); *In re Northwest Airlines Corp.*, 384 B.R. 51, 60 (S.D.N.Y. 2008).  Transfer of venue for core proceedings as well as bankruptcy petitions themselves, on the other hand, is governed by 28 U.S.C. § 1412.  *See, e.g.*, *Credit Suisse AG*, 2015 WL 5257003, at *7; *Bank of Am., N.A.*, 943 F. Supp. 2d at 426 n.5; *Northwest Airlines*, 384 B.R. at 60 n.1.

  In their Notice of Removal, Defendants indicate that they "believe the [action] is non-core." ECF No. 1, ¶ 14.  The Court agrees with that assessment.[2]  Although the term "core proceeding" is not statutorily defined, section 157(b)(2) of the Bankruptcy Code sets forth a non-exhaustive list of such proceedings.  28 U.S.C. § 157(b)(2).  A proceeding that involves "substantive rights created by

---

[2] As noted above, Defendants removed this case on the ground that it was "related to" the ESML bankruptcy, which is the least burdensome method of establishing jurisdiction under the bankruptcy removal statute.  "Related to" proceedings are non-core.  *See, e.g.*, *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015); *In re Bernard L. Madoff Inv. Securities LLC*, No. 08-1789 (SMB), 2016 WL 7241397, at *6 (Bankr. S.D.N.Y. Dec. 14, 2016); 1-3 Collier on Bankruptcy § 3.01[3][e][ii] (16th ed. 2016).  Nevertheless, because Defendants asserted only that they "believe" this proceeding is non-core, the Court observes that they may not have intended to eliminate the possibility of a stronger connection to the ESML bankruptcy than was required to establish removal jurisdiction.  Accordingly, the Court will analyze whether the proceeding is core or non-core rather than rest on the jurisdictional basis relied upon in the Notice of Removal.

federal bankruptcy law" or that "would have no existence outside of the bankruptcy" is a core proceeding. *In re Robert Plan Corp.*, 777 F.3d 594, 596-97 (2d Cir. 2015). Conversely, a claim is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012) (citation omitted).

The determination of whether a contract action is a core proceeding or a non-core proceeding also requires consideration of "(1) whether [the] contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005) (internal quotations marks and citation omitted). With respect to timing, claims for pre-petition contract damages are generally non-core. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core." (quoting *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990))); *In re Coudert Bros.*, No. 11-cv-4949 (PAE), 2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011) ("Where a contract sued upon was formed prior to the bankruptcy petition, it will generally be highly unlikely that a proceeding based on that contract turns on the bankruptcy laws."). "The critical question in determining whether a contractual dispute is core by virtue of timing is not whether the *cause of action* accrued post-petition, but whether the *contract* was formed post-petition." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999). With respect to independence from the bankruptcy case, a proceeding can be considered core "if either (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function." *Universal*, 419 F.3d at 97 (internal quotation marks and citation omitted).

Neither Plaintiff's claim for breach of contract nor Defendants' counterclaims for equitable estoppel and fraudulent inducement fall within the non-exhaustive list of core proceedings set forth in 28 U.S.C. § 157(b)(2). More generally, the claims do not involve rights created by the bankruptcy

laws, nor could the claims exist only in a bankruptcy case or in a court with federal bankruptcy jurisdiction.  Rather, those claims are creatures of state law that depend neither on bankruptcy law nor on bankruptcy jurisdiction.  They could properly have been brought—and indeed Plaintiff's claim was brought—in a state court proceeding.  Further, the contracts at issue here, which are dated 2010 and 2014, significantly predate ESML's 2016 bankruptcy petition.  Finally, resolution of the parties' claims will not affect a core bankruptcy function, as would, for example, a contractual subordination agreement affecting the priority of claims in the bankruptcy.  *See, e.g., In re Best Prods. Co.*, 68 F.3d 26 (2d Cir. 1995).  Accordingly, the Court determines that this is a non-core proceeding and will apply 28 U.S.C. § 1404(a) to resolve Defendants' motion to transfer.[3]

## B.  Legal Standard for a Motion to Transfer Pursuant to § 1404(a)

The party moving for change of venue bears the burden of showing by clear and convincing evidence that transfer is warranted.  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).  In considering a motion to transfer under § 1404(a), a district court first must determine whether the case could have been brought in the proposed transferee district.  *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004).  If the case could properly have been filed in the proposed transferee district, the court determines whether transfer actually is appropriate by weighing various private- and public-interest factors.  In *Atlantic Marine*, the Supreme Court wrote:

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling,

---

[3] In their reply brief, Defendants contend that there is a split of authority as to whether § 1404 or § 1412 should apply. In support of that contention, Defendants cite a handful of district court cases from other circuits.  The Court recognizes that some courts do not use the core/non-core distinction, but rather apply § 1412 to motions to transfer a case that is "related to" a bankruptcy.  However, most courts in this circuit have followed the approach taken here, and this approach is consistent with the text of § 1412, which refers to "a case or proceeding *under* title 11."  28 U.S.C. § 1412 (emphasis added); *see also, e.g., Credit Suisse AG*, 2015 WL 5257003, at *7 ("By its terms, [§ 1412] applies to bankruptcy cases as well as core proceedings."); *In re Thomson McKinnon Sec., Inc.*, 126 B.R. 833, 834 (Bankr. S.D.N.Y. 1991) ("It has been held in this district that motions to transfer actions that are related to title 11 cases should be controlled by 28 U.S.C. § 1404, the general change of venue provision, rather than 28 U.S.C. § 1412 because the latter statute contains no reference to related proceedings.").  In any event, the distinction makes little difference, because courts consider substantially the same factors in determining whether to grant a motion under § 1404(a) and § 1412.  *See, e.g., ResCap Liquidating Tr. v. PHH Mortg. Corp.*, 518 B.R. 259, 267 (S.D.N.Y. 2014); *Bank of Am., N.A.*, 943 F. Supp. 2d at 426 n.5.

and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." The Court must also give some weight to the plaintiffs' choice of forum.

134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

Ordinarily, "adjudication of motions for transfer are within the discretionary authority of the district courts, according to 'an individualized, case-by-case consideration of convenience and fairness.'" *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts in the Second Circuit generally consider the following non-exclusive list of factors in determining whether transfer is appropriate in a given case:

(1) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the relative means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight accorded to the plaintiff's choice of forum; and (8) judicial economy and the interests of justice.

*Bank of Am., N.A.* 943 F. Supp. 2d at 426.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine*, 134 S. Ct. at 581 (quoting *Stewart*, 487 U.S. at 31).

The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways.

First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum which the parties bargained is unwarranted. . . .

Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must

deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .  As a consequence, a district court may consider arguments about public-interest factors only.

Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*Id.* at 581-82.  As a result, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  *Id.* at 579 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)); *see also id.* at 582 ("Because [the public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.").

In determining whether a forum-selection clause is valid and enforceable, courts in the Second Circuit consider four factors:

(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.  If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (internal quotation marks, alterations, and citations omitted).  The analysis of those four factors is governed by a mixture of federal law and the law selected in the parties' contractual choice-of-law clause:  "The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law.  Furthermore, federal law should be used to determine whether an otherwise mandatory and applicable forum clause is *enforceable* . . , i.e., step four in our analysis."  *Id.* (internal quotation marks and citation omitted).  "In answering the *interpretive* questions posed by parts two and three of the four-part framework, however, [courts] normally apply the body of law selected in an otherwise valid choice-

of-law clause." *Id.* at 217-18 (citation omitted).

### C. Application to Defendants' Motion

As a threshold matter, the Court notes the somewhat atypical posture of this case. In the typical scenario, a plaintiff has filed a case in contravention of a forum-selection clause, and a defendant seeks to transfer to the forum designated in the clause. Here, the roles are switched. Plaintiff has filed its case in accordance with the forum-selection clauses, and Defendants seek to transfer the matter in contravention of those clauses. Nonetheless, the Court is aware of no reason why the teaching of *Atlantic Marine* would not apply equally in this posture. *See, e.g., BNY Mellon, N.A. v. Lyell Wealth Mgmt.*, No. 16-cv-6896 (DAB), 2016 WL 7377235 (S.D.N.Y. Dec. 8, 2016) (applying *Atlantic Marine* in the same posture). Indeed, *Atlantic Marine* reaffirmed the Supreme Court's earlier identification of a "strong federal public policy supporting the enforcement of forum selection clauses," *see Martinez*, 740 F.3d at 218-19, and that policy does not depend on the particular posture of the case before the Court in *Atlantic Marine*.

The parties do not dispute that, absent a forum-selection clause, this case could have been brought in the District of Delaware. Accordingly, the Court will begin by addressing the enforceability and applicability of the forum-selection clauses before discussing the private- and public-interest factors.

#### 1. The Guarantee Agreements Contain Valid and Enforceable Forum-Selection Clauses

Defendants do not contend that the forum-selection clauses in their guarantee agreements were not reasonably communicated to them, nor do they contend that the claims and parties involved in this suit are not subject to the clauses. They do, however, argue that the clauses should not be enforced as against their desired transfer of venue because they are merely permissive in nature. Defs.' Mem. at 8; Defs.' Reply Mem. at 6-7. This argument is not persuasive.

As noted above, the question of whether a forum-selection clause is mandatory or

permissive is governed by the law contractually selected by the parties. *See Martinez*, 740 F.3d at 217. Here, the guarantee agreements provide that they will be "governed by, and construed and interpreted in accordance with" New York law. *E.g.*, Phua Decl., Ex. 7, at 11 (§ 4.09). Under New York law, the words and phrases used by the parties in a forum-selection clause "must, as in all cases involving contract interpretation, be given their plain meaning." *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996). Based upon their plain meaning, the Court concludes that the clauses at issue here are mandatory or, more precisely, became mandatory once Plaintiff had filed suit in one of the designated fora. It is true that the first portion of the clauses, which states that "any legal action, suit or proceeding . . . *may* be instituted in or (other than by the Guarantor) removed to the U.S. federal and New York state courts located in the Borough of Manhattan, City and State of New York," *e.g.*, Phua Decl., Ex. 7, at 11 (§ 4.10) (emphasis added), is phrased in a permissive fashion. That portion must not be read in isolation, however, because the remaining portion of the clauses changes the nature of the parties' bargain:

> The Guarantor hereby waives any objection it may now or hereafter have to the laying of the venue of any such action, suit or proceeding, and further waives any claim that any such action, suit or proceeding brought in any of the aforesaid courts has been brought in any inconvenient forum.

*Id.*

This language constitutes a waiver on Defendants' part of challenges to venue and of motions premised on the doctrine of *forum non conveniens*. Thus, even if the first portion of the clauses is permissive, Defendants have, in the second portion, contracted away their right to challenge the venue chosen by Plaintiff. Because Plaintiff laid venue in one of the two alternative fora designated in the clauses, those clauses have now become mandatory. *See Trump v. Deutsche Bank Tr. Co.*, 887 N.Y.S.2d 121, 124 (App. Div. 2009) (finding there was not "any merit" to the argument that a clause providing that "[a]ny legal suit, action or proceeding . . . may at lender's option be instituted in any federal or state court in New York County, New York, and borrower

13

waives any objections which it may now or hereafter have based on venue and/or forum non conveniens" was "permissive or insufficiently mandatory"); *accord Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (declining to decide whether forum-selection clause, standing alone, was mandatory or permissive, because "[a]t least one of the contracts . . . contains a waiver of any claims of *forum non conveniens* in addition to a forum selection clause," and "[t]he combination of these clauses amounts to a mandatory forum selection clause at least where the plaintiff chooses the designated forum"); *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, No. 11-cv-2589 (VM), 2011 WL 4005345, at *2 (S.D.N.Y. Aug. 29, 2011) ("Pursuant to controlling Second Circuit authority, a forum selection clause that combines permissive forum selection language with an express waiver of venue objections is deemed to be mandatory." (citing *Aguas Lenders*, 585 F.3d at 700)).

Defendants further attempt to avoid the effect of the forum-selection clauses by arguing that the guarantees "only purport[] to waive a challenge that New York is an improper venue, which is not the basis for Defendants' motion to transfer."  Defs.' Reply Mem. at 6.  Defendants cite no authority for their assertion that "any objection . . . to the laying of the venue" refers solely to objections premised on the chosen venue being improper as contemplated by 28 U.S.C. § 1406 and Fed. R. Civ. P. 12(b)(3), and the Court declines to adopt such a strained reading.  Plainly read, Defendants have waived their rights to seek to alter the venue chosen by Plaintiff for this action.

Because they were reasonably communicated to Defendants, are mandatory in nature, and apply to the claims and parties here, the forum-selection clauses in Defendants' guarantee agreements are presumptively enforceable.  Defendants do not make a sufficient showing to overcome this presumption.  They do not argue that the clauses were procured by fraud or overreaching, nor do they show that enforcement would be unreasonable or unjust.[4]

---

[4] The Court will address Defendants' argument that the forum-selection clause should not be enforced here due to the connection between the claims in this case and the ESML bankruptcy in the following section of this decision.

### 2. Public-Interest Factors Do Not Weight Against Enforcing the Forum-Selection Clauses

As already noted, *Atlantic Marine* provides that a valid forum-selection clause should be given "controlling weight" in a transfer-of-venue analysis except in "the most exceptional cases" where public-interest factors counsel otherwise.  134 S. Ct. at 579.  This is not one of those exceptional cases.  Defendants rely almost entirely on the decision in *Credit Suisse A.G*, which Defendants cite to support their arguments that "a forum selection clause does not prevent a transfer under 28 U.S.C. § 1404(a)," Defs.' Mem. at 8, and that *"Atlantic Marine* [is] inapplicable to a bankruptcy removal case."  Defs.' Reply Mem. at 3.

Defendants misapprehend the *Credit Suisse A.G.* decision.  The court made no such broad holdings, but instead concluded—consistent with *Atlantic Marine*—that the forum-selection clause at issue was not controlling in the case before it because public-interest factors counseled strongly in favor of transferring the case to the district in which the related bankruptcy case was pending.  *See, e.g.*, 2015 WL 5257003, at *11 ("The palpable conflict between this action and the Bankruptcy Case evokes a public interest sufficient to outweigh the forum selection clause.").

In *Credit Suisse A.G.*, the court found that the claims asserted were "closely intertwined" with the bankruptcy proceeding, and that the rights that the plaintiff sought to enforce under the contract at issue were "in direct conflict with defendants' status and rights under the Bankruptcy Code."  *Id.*  The court also found that the rights that the plaintiff sought to enforce "undercut the power of the Bankruptcy Court and jeopardize the legitimacy of the Debtors' reorganization."  *Id.*

The court did not reach that conclusion based upon a generalized, minor relationship to the bankruptcy proceeding.  Rather, the plaintiff (a creditor) brought claims in this district seeking to limit the action of other creditors in a bankruptcy proceeding pending in Illinois.  For example, the plaintiff sought to enjoin the defendants, including all members of the Committee of Second Priority Noteholders (the "Committee") appointed by the United States Trustee "from taking any

action to challenge, contest or support any other person in contesting or challenging, directly or

indirectly, in any proceeding (including in [the] bankruptcy proceedings), the validity, perfection,

priority or enforceability of the Bank Debt Liens." *Id.* at *5. The plaintiff also sought to enjoin the

defendants, including all members of the Committee, "from taking any action to enforce rights or

exercise remedies with respect to the Property Transfers or the B-7 Transaction." *Id.*

In determining that the claims asserted presented such a conflict with the bankruptcy

proceeding that the public interest outweighed enforcement of the forum-selection clause, the court

explained:

> Apart from impeding the functioning of a standing committee, compelling
> defendants to take no action that runs contrary to plaintiff's interests interferes
> with the bankruptcy in other respects, including by undercutting the plan
> confirmation process. Indeed, plaintiff's attempt to cabin defendants' conduct, or
> ramping up their leverage by instituting this suit, is antithetical to the workout
> process.

*Id.* at *11. The court also found that the relief sought related "directly to the ability of the

Committee Defendants to carry out their core duties under the Code." *Id.* at * 8.

There simply are no such direct conflicts between the claims asserted here and the ESML

bankruptcy. Instead, there is a remote relationship that, while sufficient to support "related-to"

jurisdiction, is insufficient to overcome the forum-selection clauses. Plaintiff does not seek to limit

the conduct of the debtor, creditors, or committee members in the ESML bankruptcy case in any

respect. Instead, they bring a simple and relatively straightforward action to enforce a contract

under which Defendants agreed to guarantee a loan. Moreover, the Court does not perceive any

way in which a judgment in this case could "jeopardize the legitimacy" of ESML's reorganization.

While it is true that Plaintiff has filed a proof of claim in the ESML bankruptcy case for the

amounts due under the Credit Agreement, its right to which would be eliminated if it were to win a

judgment against Defendants here, that fact is not likely to have any net effect on the bankruptcy

case. That is so because, as Defendants acknowledge in the Notice of Removal, they "may assert

rights of subrogation, indemnification, or contribution against the Debtors" in the bankruptcy case. ECF No. 1, ¶ 11.  In other words, they would likely step into Plaintiff's shoes and pursue the same amounts originally claimed by Plaintiff.[5]

> Defendants also assert that transfer is in the public interest because
>
>> the Delaware Bankruptcy Court . . . and the District Court in Delaware, are familiar with and routinely adjudicate issues concerning sophisticated commercial disputes, corporate loan documents and guaranties.  The courts within the District of Delaware are perfectly capable of deciding the issues of law that will be presented in this action.

Defs.' Mem. at 9-10.  This Court does not doubt that the federal courts in Delaware would be perfectly capable of resolving this case, but that is not the question.  Defendants have made no showing that those courts are *better* suited to resolve this case.

> Defendants further argue that the interest in judicial economy weighs in favor of transfer. This argument appears to relate largely to Defendants' counterclaims.  Specifically, Defendants assert that
>
>> the adjudication of this action will require third party discovery from Debtors, and the Delaware Bankruptcy Court is best suited to most efficiently supervise that discovery . . . .  In addition, the Delaware Bankruptcy Court is intimately familiar with the Project, its financing, and its financial difficulties.  That factual knowledge will help streamline the administration of this action."

Defs.' Mem. at 8-9.  The Court is not persuaded.  Even assuming that a transfer of this case would be efficient in the way that Defendants suggest, any such increase in efficiency would be marginal at best.  Defendants will have the opportunity to conduct discovery, as appropriate, in this Court, and this Court can learn the factual underpinnings necessary to resolve Defendants' counterclaims without much ado.  Indeed, even were this case to be transferred to the District of Delaware and

---

[5] To the extent that Defendants argue that transfer is in the public interest because success on their counterclaims could mean that a substantial sum of money would inure to the benefit of the estate, that is not enough to warrant disregarding the parties' bargained-for forum-selection clause.  For one thing, because Defendants are distinct entities from ESML, it is unclear how a judgment in Defendants' favor here would augment ESML's estate in any direct sense.  And in any event, if such a judgment were to augment the estate if entered by the Bankruptcy Court, it would likewise augment the estate if entered by this Court.

subsequently referred to the Delaware Bankruptcy Court, the bankruptcy court would not be empowered to finally resolve this dispute. Because this is a non-core proceeding, the bankruptcy judge would be required to submit proposed findings of fact and conclusions of law for *de novo* review and entry of a final order or judgment by the district court. 28 U.S.C. § 157(c)(1). At that point, the Delaware district court would need to learn the relevant factual underpinnings, just as this Court can and will do.

Defendants also attempt to support their motion by reference to *Winstar Holdings, LLC v. Blackstone Group*, No. 07-cv-4634 (GEL), 2007 WL 4323003, at *7 (S.D.N.Y. Dec. 10, 2007). Defendants cite to *Winstar* for the proposition that "[t]here is no plausible rationale for removing the case to federal court in order to decide it in a forum remote from the court where [the bankruptcy] proceeding is pending." Defs.' Mem. at 5. Although the court in *Winstar* did grant a transfer motion, that case does not help Defendants here for at least two reasons. First, it predates *Atlantic Marine*. Second, and more importantly, the court in *Winstar* transferred the case *to the venue designated in the parties' forum-selection clause*, not away from the designated forum, as Defendants would have this Court do.

Finally, Defendants cite *Smartmatic USA Corp. v. Dominion Voting Systems Corp.*, No. 13-cv-5349 (KBF), 2013 WL 5798986, at *3 (S.D.N.Y. Oct. 22, 2013), for the proposition that "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." Defs.' Reply Mem. at 2. Defendants do not engage with the fact that that presumption was articulated by the Second Circuit, and has consistently been applied by district courts, in the context of transfer motions governed by 28 U.S.C. § 1412. *See In re Manville*, 896 F.2d at 1391; *see also, e.g., Capmark Fin. Grp Inc. v. Goldman Sachs Credit Partners L.P.*, No. 11-cv-7511, 2012 WL 698134, at *4 (S.D.N.Y. Mar. 5, 2012). As the Court has already explained, § 1412 does not apply to the motion at issue here because this case is non-core. But even if that presumption did apply, it would not be the only presumption at work.

As other courts have recognized, that presumption can conflict with the "strong presumption in favor of the plaintiff's choice of forum."  *E.g.*, *Official Comm. Of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 750 (S.D.N.Y. 2004) (explaining that "[t]he two presumptions effectively cancel each other out, and the motion will accordingly be decided on the basis of the remaining factors").  Of course, no such conflict would arise where a defendant seeks to transfer a case filed by a plaintiff in the district in which the related bankruptcy is pending.  That was the situation before the Second Circuit in *In re Manville*.  896 F.2d at 1390.  But where, as here, a defendant attempts to transfer a case away from the plaintiff's chosen forum to the district in which the related bankruptcy is pending, the conflict is clear.  Defendants do not address how the Court should resolve that conflict.  Moreover, there is also a strong presumption in favor of the enforcement of forum-selection clauses.  *See Atl. Marine*, 134 S. Ct. at 579; *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("[A] forum clause should control absent a strong showing that it should be set aside.").  Defendants do not address how this presumption should be reconciled with the one it proffers, and because *Smartmatic* did not involve a forum-selection clause, it is of little help in that regard.

In sum, Defendants have not carried their burden to show that this is the "exceptional case" where public interest factors will override a valid and enforceable forum-selection clause.

### D.  The Court Would Reach the Same Decision Under § 1412.

In their reply brief, Defendants argue that *Atlantic Marine* is not controlling because it did not involve a bankruptcy and because it applied § 1404(a), while § 1412 should apply here.  Defs.' Reply Mem. at 3-5.  As explained above, most courts in this circuit apply § 1404(a), but the distinction between § 1404(a) and § 1412 is largely inconsequential, because "[t]he analysis under both statutes is substantially the same."  *ResCap*, 518 B.R. at 267.

Defendants contend that some courts have stated that § 1412 is "more generous to the moving party" than § 1404(a) because it is stated in the conjunctive rather than the disjunctive.

Defs.' Mem. at 4-5 (citing *In re Adkins Supply, Inc.*, No. 11-10353-RLJ-7, 2015 WL 1498856, at *6 (Bankr. N.D. Tex. 2015)).[6]  It is true that § 1412 states that a "district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice *or* for the convenience of the parties."  28 U.S.C. § 1412 (emphasis added).  It is also true that, in general, because those standards are phrased in the disjunctive, "transfer is appropriate even if only one is met."  *See* Defs.' Mem. at 4.  But even so, the valid forum-selection clauses here would subsume any consideration of "the convenience of the parties," leaving the Court to consider only "the interest of justice."  This result is no different in substance than the analysis the Court has conducted of public-interest factors under § 1404(a).

Finally, Defendants argue that § 1412 is distinct from § 1404(a) because it takes into account "the interests of the bankruptcy estate."  Defs.' Mem. at 4.  But, as explained earlier, the analysis under § 1404(a) is not limited to a rigid set of non-specific factors.  Instead, it requires "individualized, case-by-case consideration" of various private- and public-interest factors, *see In re Manville*, 896 F.2d at 1391, and is flexible enough to consider the interests of the bankruptcy estate where, as here, such consideration is appropriate.  In discussing and distinguishing the decision in *Credit Suisse AG*, the Court has given substantial consideration to the interests of the bankruptcy estate.[7]

As noted earlier, the Second Circuit recognized in *In re Manville* that "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy."  896 F.2d at 1391.  Although the Second Circuit did

---

[6] Section 1412 may also be more generous to the moving party because, unlike § 1404(a), it does not require the transferee court to be one in which the case could initially have been brought.  That distinction makes no difference here, because neither party disputes that this case could have been brought in the District of Delaware.

[7] Although the parties do not raise the issue, the Court observes that some courts have applied a lesser burden of proof—preponderance of the evidence—to motions for change of venue under § 1412 than under § 1404(a).  *See, e.g.*, *In re Enron Corp.*, 317 B.R. 629, 639 n.9 (Bankr. S.D.N.Y. 2004).  That difference in the burden of proof would not have changed the result here, particularly given the presence of a valid forum-selection clause and the presumption of enforcement described in *Atlantic Marine*.

not state that the presumption applied only to motions governed by § 1412, courts have typically applied it only in that context. As also noted earlier, the presumption articulated in *In re Manville* conflicts in this case with the strong presumption in favor of the plaintiff's choice of forum as well as the strong presumption in favor of the enforcement of a valid forum-selection clause. Because the connection between this case and the ESML bankruptcy is relatively thin, the Court would not find that the § 1412 presumption trumps the other presumptions, even if it were to apply § 1412.

In addition, in response to Defendants' argument that the holding of *Atlantic Marine* applies to motions under § 1404 and not § 1412, the Court observes that *Atlantic Marine* was hardly the first Supreme Court decision to express a heavy presumption in favor of the enforcement of valid forum-selection clauses. *See, e.g., Bremen*, 407 U.S. at 15 ("[A] forum clause should control absent a strong showing that it should be set aside."); *Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 702 (S.D.N.Y. 2015) (stating that *Atlantic Marine* "reconfirmed" this *Bremen* principle). Instead, the innovation of *Atlantic Marine* was its holding that a forum-selection clause should be enforced by a motion to transfer rather than a motion to dismiss for improper venue. *See* 134 S. Ct. at 575 ("The question in this case concerns the procedure that is available for a defendant in a civil case who seeks to enforce a forum-selection clause.").

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this case to the District of Delaware is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 19.

SO ORDERED.

Dated:  January 12, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge

21